**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DONNA L. POWERS,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 11-302 (JEB)** |
| **MICHAEL B. DONLEY,**<br>**Secretary of the Air Force,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Donna Powers is a former Air Force officer who believes that her supervisor's failure to rank her among her peers is an injustice that merits this Court's intervention.  During her tenure in the Air Force, Powers consistently received rave reviews from her supervisors – often being ranked first among her fellow officers and sometimes even outshining all the other officers a supervisor had observed in his career.  That changed somewhat in 2004 when Powers received a review that touted her many accomplishments but did not compare her performance to that of her peers.  The absence of a ranking in that report, she contends, "stands as the only blemish on an otherwise exemplary body of performance evaluations," Pl. Mot. & Opp. at 24, and ultimately prevented her from being promoted to colonel.

After being denied redress through multiple internal Air Force channels, Powers filed this suit seeking judicial review of the final decision of the Air Force Board for the Correction of Military Records (AFBCMR), which declined to void, or otherwise remove from Powers's record, her 2004 performance report.  Defendant Michael Donley, the Secretary of the Air Force, has now moved for summary judgment, and Powers has cross-moved for the same.  Because

1

Powers has failed to present convincing evidence of substantive or procedural error with respect to her 2004 performance review, the Court finds that it must defer to the Board's decision to let the report stand.

## I.       Background

Powers is a retired Air Force officer whose performance record in the military is, by all accounts, quite distinguished.  Her supervisors consistently gave her outstanding reviews in her Officer Performance Reports (OPRs).  One of her raters described her as the "sharpest, most enthusiastic, and productive captain [he had] seen in [his] 17-year AF career."  AR at 47-48. Others indicated that she was in their "top 1%."  AR at 31, 33, 35.  Over and over again, in a variety of duty assignments, Powers's supervising officers noted her extraordinary performance. See, e.g., AR at 52 ("talented and resourceful officer, noted for producing superior results under any conditions"), 39 ("best commander! World class officer: dynamic leader, smart, tenacious, innovative, and tireless"), 46 ("[s]uperb leader – the very best – extremely charismatic and energetic – handles impossible tasks with ease").

In 2002, Powers began serving under Colonel Robert W. Tirevold as commander for the 3rd Communications Squadron at Elmendorf Air Force Base in Alaska.  AR at 28.  Tirevold rated Powers's performance in 2003 and 2004 in her annual OPRs.  AR at 29, 111.  In 2003, he stated that she was "by far [his] number one [squadron commander]."  AR at 29.  Powers's additional rater that year, Brigadier General Robertus Remkes, agreed, describing her as the "#1 comm professional [he had] ever seen within [his] career" and "#1 of 17 [squadron commanders] in support role."  AR at 106.

Powers's 2004 OPR was likewise positive.  Tirevold called her a "dynamic," "savvy," and "strong" leader and an "expert negotiator."  AR at 12.  He noted, furthermore, that the

"[u]nit excelled under her leadership," and that she optimized contractor efforts, saving the government "a whopping $1M annually."  Id.   Powers's additional rater in 2004 was Brigadier General Michael Snodgrass, who also had positive comments on her performance.  Id. at 13.  He stated that she was "an excellent leader" with "superb staff skills" and a "positive impact on [the] wing."  Id.  Neither Tirevold nor Snodgrass "stratified" Powers's performance in her 2004 OPR – that is, they did not rank her numerically relative to her peers.

In 2004, Powers went before a board to be considered for promotion to colonel.  AR at 115.  Among the package of materials reviewed by the board was a Promotion Recommendation Form completed by Snodgrass.  Id.  Snodgrass wrote a number of positive comments about Powers's performance and also quoted several "stratification" remarks by others who had supervised her – e.g., "'Top 1%' says CENTCOM J2," "'#1 of 17 spt Sq/CCs' says 3 WG/CC." Id.  His overall recommendation was "promote," which is the intermediate option between "definitely promote" and "do not promote this board."  Id.  The board ultimately decided not to promote Powers to colonel in 2004.  AR at 3.

Powers believes her 2004 OPR was unjust and contributed to this non-promotion.  See Pl. Opp. & Mot. at 5; AR at 7-8 ("If I were not selected [for promotion to colonel], I am certain this report will be the reason.").  Specifically, she thinks the lack of stratification in her 2004 OPR suggests a decline in performance from the previous year in which Tirevold indicated she was "by far [his] number one [squadron commander]." AR at 7-8, 29.

Seeking to have the OPR removed from her record, Powers appealed to the Evaluation Reports Appeal Board, which denied her appeal.  AR at 146.  She also applied *pro se* to the AFBCMR.  AR at 7-8.  Before rendering its decision, the AFBCMR sought an advisory opinion from Headquarters Air Force Personnel Command, Directorate of Personnel Program

Management (HQ AFPC/DPPE), which recommended denying Powers's request to void her 2004 OPR. AR at 18-19.  The Board ultimately declined to grant relief, finding that "insufficient relevant evidence ha[d] been presented to demonstrate the existence of error or injustice." AR at 5.  Powers subsequently submitted two requests for reconsideration, one in which she represented herself and one in which she was represented by counsel.  AR at 62-63, 85-101. Both were denied.  AR at 54-56, 71-73.

On February 4, 2011, Powers filed this action seeking administrative review of the AFBCMR's final decision.  Defendant Michael Donley and Powers have filed Cross-Motions for Summary Judgment, which the Court now considers.

## II.   Legal Standard

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision.  The standard set forth in Rule 56(c), therefore, does not apply because of the limited role of a court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing National Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)).  "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id. (internal citations omitted).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 129 S. Ct. 1800, 1810 (2009).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  This is a "narrow" standard of review as courts defer to the agency's expertise.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation omitted).  The reviewing court "is not to substitute its judgment for that of the agency," id., and thus "may not supply a reasoned basis for the agency's action that the agency itself has not given." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-86 (1974) (internal quotation omitted).  Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." Id. at 286.

## III.    Analysis

Powers's Complaint against the Secretary has two components.  First, she alleges that the AFBCMR's final decision – declining to remove Powers's 2004 OPR from her record – violated the APA because it was "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or was otherwise contrary to law."  Compl., ¶ 57 (citing APA, 5 U.S.C. § 706).  Second, she alleges that the Board's decision was "contrary to applicable regulations" and, consequently, violated her "constitutional right to due process of law." Id., ¶¶ 59-66.  If the Court finds in her favor, Powers requests that it void her 2004 OPR, direct her promotion to

colonel (or direct that a board be convened to consider her promotion), and award back pay up to $10,000.  Id., ¶ 67.

The Secretary contends that the Court should award him summary judgment because the decision of the Board is supported by substantial evidence and Powers has not identified an actionable due process interest, let alone proven error.  See Def. Mot. at 12.  Plaintiff in her Opposition now concedes her constitutional due process claim, so only her APA claim remains at issue.  See Pl. Opp. & Mot. at 25 ("While Plaintiff may not have an actionable Constitutional claim based upon the Air Force's violations of its own regulations, this Court nonetheless remains empowered to inquire as to whether an action of a military agency conforms to the law, or is instead arbitrary, capricious or contrary to the statutes and regulations governing that agency.").

With respect to the APA claim, Powers raises two central arguments.  She first maintains that there is substantial evidence that Tirevold's lack of stratification in the 2004 OPR unfairly indicates a decline in her performance, which he failed to convey to her before issuing the report and which is inconsistent with her actual performance during the rating period.  See Pl. Reply at 2-3; Compl., ¶¶ 43-44.  She argues, in addition, that the record shows that Snodgrass failed to examine Powers's Personnel Information File before signing her OPR.  See; Pl. Opp. & Mot. at 17-18.  According to Powers, these actions by Tirevold and Snodgrass violated Air Force requirements.  See Compl., ¶¶ 45-48; see also Def. Exh. 1 at 21 (AFI 36-2406).  These violations, she suggests, mean that the Board's decision to allow the 2004 OPR to remain in her record was not supported by substantial evidence.  See Pl. Opp. & Mot. at 18.

In reviewing the Motions for Summary Judgment on Powers's APA claim, the Court will first consider the Board's findings with respect to Tirevold's decision not to stratify Powers in

her 2004 OPR.  It will then turn to the Board's decision regarding Snodgrass's duties as an additional rater and reviewer.

A.  Stratification

There are two issues surrounding the lack of stratification in Powers's 2004 OPR.  The first is whether the Board had substantial evidence to support its conclusion that the absence of stratification was not "error or injustice."  AR at 5.  The second question, as framed by Plaintiff, is whether Tirevold failed to notify Powers that her performance had declined since her 2003 OPR.  Since Powers does not point to, and the Court is not aware of, a specific regulation requiring raters to inform their supervisees when their performance suffers, the Court can only assume that Powers's claim is that Tirevold did not give her regular performance feedback as required under Chapter 2 of AFI 26-2406.  The Court must thus determine if the Board had substantial evidence to determine sufficient feedback was given.

In evaluating the Board's findings, the Court must keep in mind the deference generally owed to agency actions under the APA.  If the agency "exercised its discretion in a reasoned manner," the Court must "defer to the agency's ultimate substantive decision."  Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1512 (D.C. Cir. 1989) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)).  When undertaking judicial review of an agency decision, the district court's role is "to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct."  See id. at 1511.

The agency is entitled to even greater deference when its decision concerns the correction of military records.  See, e.g., id. at 1514 (military records corrections boards benefit from an "unusually deferential application of the 'arbitrary or capricious' standard"); Cargill v. Marsh, 902 F.2d 1006, 1008 (D.C. Cir. 1990) ("heightened deference"); Viles v. Ball, 872 F.2d 491, 495 (D.C. Cir. 1989) ("exceptionally deferential").  Although all agencies subject to APA review are

held to the standard outlined in § 706, "the question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute, or other source of law constrains agency action." Id. While a "broad grant of discretion … does not entirely foreclose review," it "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination." Id. Congress has granted the secretaries of military departments wide latitude with respect to the correction of their department's records. Specifically, the Secretary is authorized to correct such records when he "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (emphasis added). In other words, he may choose to let "even an undisputed error … or a conceded injustice" stand if he does not believe it necessary to correct it. See Kreis, 866 F.2d at 1514. Given the Secretary's broad discretion, and the extreme deference he is correspondingly owed, the D.C. Circuit has stated that "perhaps only the most egregious decisions [involving military records correction] may be prevented" by the courts. Id. at 1515.

With this in mind, the Court now turns to the Board's finding that the absence of stratification comments in Powers's 2004 OPR was not "error or injustice." Powers argues that Tirevold's failure to compare her numerically to her peers suggests that her performance declined from the previous year, when he ranked her "by far [his] number one [squadron commander]." AR at 23, 29. Lack of stratification alone cannot, however, constitute error because stratification is optional in OPRs – as even Powers acknowledges. See Pl. Opp. & Mot. at 24. In an Air Force document that provides guidance to officers challenging their performance reviews, it states that stratification comments are "not mandatory for inclusion [and] their omission does not make the report inaccurate." Pl. Exh. 2 at 17 (Correcting Officer and Enlisted Evaluation Reports, AFI 36-2401, ¶ A1.5.1 (Feb. 20, 2004)) (emphasis in original); see also AR

at 18-19.  Tirevold's decision not to stratify Powers was thus a judgment call that he was fully entitled to make.  Not only has Powers failed to show that this decision violated established Air Force procedures, she has conceded it did not.  See AR at 23 ("I am fully aware that stratification is not a required part of the rating process.").

Furthermore, the lack of stratification was not a mere oversight by Tirevold, but rather an affirmative decision on his part.  Tirevold stated in an email to Powers that, based on his observations of her performance, "it was not appropriate to provide the same stratification" in her 2004 OPR as in her 2003 report.  AR at 9.  Tirevold had expressed "concerns" about Powers's performance, and in his judgment, he could no longer say she was his best squadron commander.  Id.  According to Powers, however, her performance had in fact remained constant or improved, as evidenced by her nomination for the highly competitive and prestigious Lance P. Sijan USAF leadership award.  AR at 113; Compl., ¶ 44.  Her nomination carries little weight here, however, because Powers herself stated that it was not Tirevold but his successor who nominated her – and he did so "lacking information to the contrary."  AR at 23.

In any event, courts are not in the business of substituting their judgment for that of military officers.  In light of separation-of-powers concerns, "the judiciary [must] be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters."  Kreis, 866 F.2d at 1511.  This is especially true when the challenged agency decision is a supervisor's subjective evaluation of an officer.  See Guy v. United States, 608 F.2d 867, 871 (Ct. Cl. 1979) ("The process of evaluating officers by other officers is an inherently subjective process …."); Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (allowing the courts to become "a forum for appeals by every soldier dissatisfied with his or her ratings … would take the judiciary far afield of its area of competence").  The D.C. Circuit

has noted that courts are "spectacularly unsuited" to "reassess the relative rankings" of military officers, thereby "confirm[ing] the wisdom of deferring to the reasonable judgment of the Correction Board." Cone, 223 F.3d at 795; see also Sargisson v. United States, 913 F.2d 918, 922 (Fed. Cir. 1990) ("A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit."). The Court would thus clearly be overstepping its bounds were it to substitute its judgment for Tirevold's in regard to Plaintiff's performance.

In addition to substantive errors, Powers also contends that Tirevold failed to apprise her that her performance had suffered since her 2003 OPR, and in so doing, committed procedural error. Compl., ¶ 43. Although Powers implies that supervisors are obliged to convey any concerns about performance to their supervisees, she cites only generally to AFI 36-2406, a 149-page document that governs enlisted and officer evaluations; she does not point to any particular provision Tirevold allegedly violated. As far as the Court can tell, AFI 36-2406 does not specifically require supervisors to inform their supervisees of declines in their performance. It simply directs raters to give performance feedback to ratees at regular intervals. See AFI 36-2406, ¶ 2.2.2.1. Such feedback consists of "private, formal communication" in which a rater informs a ratee of what is expected of her and "how well [she] is meeting those expectations." Id. at ¶ 2.1. It is not a violation, furthermore, for a supervisor's evaluation in an OPR to differ from the feedback he has given the officer during the rating period:

> While current Air Force policy requires performance feedback for
> personnel, a direct correlation between information provided during
> feedback sessions and the assessments on evaluation reports does
> not necessarily exist. For example, if after a positive feedback
> session, an evaluator discovers serious problems, he or she
> must record the problems in the evaluation report even when it
> disagrees with the previous feedback…. Lack of counseling or
> feedback, by itself, is not sufficient to challenge the accuracy or

justness of a report.

AFI 36-2401, ¶ A1.5.8.  Powers thus has no ground to stand on.

The only remaining question, therefore, is whether Powers received sufficient feedback. As a lieutenant colonel, Powers was entitled to receive an initial and a midterm feedback session. AFI 36-2406 at Table 2.1.  Initial feedback must occur within 60 days of when the rater first begins supervising the ratee (and need not be repeated in subsequent reporting periods), and midterm feedback must be conducted "midway between the date supervision begins and the projected close-out date of the next EPR/OPR."  Id. at Table 2.1, nn. 1-2.  The initial feedback session is not at issue here as Tirevold began supervising Powers well before the relevant reporting period, i.e. June 2003 to June 2004, and the midterm feedback, which took place on December 15, 2003, is well documented in the record.  See AR at 3, 13, 93. In any event, Powers does not dispute that these feedback sessions occurred.  There is thus ample evidence that Tirevold provided the feedback required by the AFI.

Even if Tirevold had been required to inform her "of changes in [her] performance that would adversely impact his evaluation," AR at 7, there is substantial evidence that he did so.  In response to a certified letter Powers sent Tirevold requesting an explanation for her 2004 OPR, Tirevold wrote that he "did discuss issues and concerns with [her] during [their] spring feed back [sic] session," in which Powers relayed "the medical issue [she was] dealing with."  AR at 7, 9. He further explained that her OPR was "not intended to be negative and indicates significant accomplishments … [but] [n]ot everyone can get the number 1 or a [Definitely Promote]…"  AR at 9.  Finally, Powers contends that Tirevold did not have a feedback session with her in the spring of 2004, though she does recall "initiating several conversations with [him] … regarding [her] health."  AR at 22.

Given the extremely high burden for reversing the decision of a military records correction board, the Court finds that Powers has not presented sufficient evidence to warrant disturbing the Board's decision in relation to Tirevold's 2004 OPR.

B.  <u>Additional Rater and Reviewer</u>

In addition to complaining about the lack of stratification, Powers challenges the Board's decision on the ground that Snodgrass did not carry out his duties as her additional rater and reviewer.  One of the responsibilities of the additional rater is to "review[] the PIF … and return[] [the] report to the rater for reconsideration, if appropriate, to ensure an accurate, unbiased, and uninflated report."  AFI 36-2406, ¶ 3.2.2.1.  Reviewers are subject to the same requirement and are also given authority to seek out additional information and note "nonconcurrence" with previous evaluators.  <u>See</u> AF 36-2406, ¶ 3.2.3.1-3.

Powers argues that Snodgrass could not have complied with the requirement that he review the PIF because he was traveling between June 28 and August 22, 2004.  AR at 95, 140-45.  He was therefore not on the base on July 1, 2004, the date he signed the OPR.  <u>Id.</u>  According to Powers's affidavit, her PIF was on the base – and only accessible from that location – from the date it was signed by Tirevold (June 4, 2004) until Powers left the base on August 11, 2004.  AR at 94-95, 135-137.  Since the official sign-out sheet indicates that no one checked it out during that period, Powers concludes that Snodgrass did not look at her file before signing the contested report.  <u>See</u> AR 94-97; Compl., ¶ 46; Pl. Mot. & Opp. at 18-19.

The Board found this evidence unpersuasive.  AR at 73.  In denying Powers relief, it relied, in part, on an advisory opinion from the Evaluation Appeals Program Office (DPSIDEP).  DPSIDEP stated that the fact that Snodgrass was away from the base the day he signed the OPR "is not evidence that he did not review the PIF."  AR at 72.  He "could have made arrangements to review the PIF before departure, had someone review it and brief him, had the rater brief him,

reviewed it when he actually signed the report, etc." AR at 147. The opinion also noted that the requirement that evaluators review the PIF is intended to "ensure [they] are aware of the duty performance of those individuals they are evaluating, through what ever [*sic*] means are available, which includes but is not limited to personal day-to-day contact, reviewing of records, gathering information from those who have direct knowledge of her performance, etc." AR at 72. Adopting DPSIDEP's rationale, the Board concluded that Snodgrass's travel schedule alone is insufficient to show that he failed to carry out his duties as an additional rater and reviewer. AR at 73. This is a conclusion that this Court, given the deferential standard of review, finds no reason to disturb.

Powers also argued to the Board that if Snodgrass had reviewed her OPR, he would have noticed that Tirevold's comments in Powers's 2003 and 2004 OPRs "differed radically" from one another and sought additional information to ensure an accurate and unbiased report. AR at 95, 99, 136. To the extent she raises that argument here, see Compl., ¶ 47, Pl. Mot. & Opp. at 21, the Court finds it purely speculative. Tirevold's reviews of Powers in 2003 and 2004 can hardly be described as radically different; even if they varied in degree, both were clearly positive. See AR at 9, 28-29, 110-111. In any event, there could be a variety of reasons for variations in OPRs. Even dramatic changes in a rater's reviews from year to year do not necessarily indicate an inaccuracy. It is therefore unreasonable to ask the Court to conclude from the fact that Snodgrass did not seek additional information regarding Powers's 2004 OPR that he did not review her PIF.

The burden borne by a plaintiff challenging the decision of a military records correction board is an exceedingly high one. She "must prove 'clearly and convincingly' that the 'presumption of regularity' in the preparation of administrative records should not apply, and

that '[a]ction is warranted to correct a material error, inaccuracy, or injustice.'" <u>Cone</u>, 223 F.3d at 792-793 (citation omitted); <u>see also</u> <u>Frizelle v. Slater</u>, 111 F.3d 172, 177 (D.C. Cir. 1997) (plaintiff must overcome "strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith" (internal quotations omitted)).  Here, the Court presumes that Snodgrass carried out his duties faithfully, and the scant evidence and speculative theories Powers offers to the contrary fall far short of what she needs to prevail.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion.  An Order consistent with this Opinion will issue this day.


<u>/s/ *James E. Boasberg*</u>
JAMES E. BOASBERG
United States District Judge


Date:  February 23, 2012